IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES W. CONNELL<br>317 York Road<br>Carlisle, PA 1<br><br>*Plaintiff,*<br><br>vs.<br><br>CIMC INTERMODAL EQUIPMENT<br>34 Creek Drive<br>Emporia, VA 23847<br><br>-and-<br><br>BUZZ HAGEN<br>34 Creek Drive<br>Emporia, VA 23847<br><br>*Defendants.* | NO. _____<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby files the following Complaint against each Defendant:

### INTRODUCTION

1. Plaintiff initiates this action to seek redress against each Defendant for violations of the Americans with Disabilities Act ("ADA") and other applicable federal and state law.

## PARTIES

2. Plaintiff is an adult individual currently residing at the above address.

3. Defendant CIMC Intermodal Equipment is believed and therefore averred to be a corporation incorporated of the Commonwealth of Virginia.

4. Defendant, Buzz Hagen, is an employee of CIMC Intermodal Equipment and is liable as an aider and abettor under the PHRA.

5. Defendant is an "employer" within the meaning of the ADA because it is engaged in an industry affecting interstate commerce and because they maintained or maintains fifteen ("15") or more employees for each working day in each of twenty ("20") or more weeks in the current or preceding calendar year.

6. The Defendant is an "employer" within the meaning of the ADEA because it is engaged in an industry affecting interstate commerce and because it maintains or maintained twenty (20) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.

7. Defendant also maintains a sufficient number of employees to satisfy the jurisdictional prerequisites of the Pennsylvania Human Relations Act (requiring four or more employees).

## JURISDICTION and VENUE

8. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

9. The Court may properly maintain personal jurisdiction over each Defendant because each Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over each Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10. The United States District Court for the Middle District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

11. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because each Defendant is located in and/or conduct business in this judicial district and/or because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PROCEDURAL and ADMINISTRATIVE REMEDIES

12. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

13. Plaintiff has satisfied the procedural and administrative requirements for proceeding with an action under the ADA.

14. Plaintiff filed a timely written charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination at No. 437-2016-00214 on or about December 15, 2015.

15. Plaintiff filed another timely written charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination at No. 530-2016-01353 on or about January 7, 2016.

16. The EEOC administratively merged the two charges under No. 437-2016-00214 by way of letter dated April 25, 2016.

17. The instant action is timely because it is initiated at least ninety ("90") days after the issuance of a Right to Sue Letter by the EEOC as required by the ADA which was mailed on or about January 29, 2016.

18. Plaintiff has exhausted his federal and state administrative remedies as to the allegations of the instant Complaint at the time of filing.

## FACTUAL BACKGROUND

19. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

20. Plaintiff's date of birth is September 8, 1953.

21. Plaintiff began his employment on or about April 2013 as a Director of Engineering.

22. Prior to that date, on or about March 21, 2013, Plaintiff received an email from Buzz Hagen, the CEO of CIMC Intermodal Equipment, requesting for Plaintiff to reach out to him because he wanted to discuss something.

23. The topic was an employment offer with him at "DCLLC d/b/a CIMC Intermodal Equipment" since apparently, he needed Plaintiff's expertise desperately.

24. Buzz Hagen knew of Plaintiff's qualifications from his previous employment experience.

25. Plaintiff was, at that time, the Director of Fleet Maintenance for Pam Transport in Tontitown, AR.

26. On or about March 23, 2013, Plaintiff accepted Buzz Hagen's employment offer letter as the "Director of Engineering Processes" and on April 15, 2013 arrived in South Gate, California to begin his new position.

27. In or around September 2013, Plaintiff was promoted from "Director of Engineering Processes" to V.P. of Engineering Processes.

28. Thereafter, in or around August 2015, Plaintiff was promoted to V.P. of Operations & Engineering.

29. Plaintiff worked out of his home office in Carlisle, PA throughout his tenure at CIMC-IE.

30. The company was aware of the telecommuting arrangement and provided Plaintiff with a cell phone, laptop, fax/copier/scanner, computer screen, computing docking station and all of the office supplies he needed.

31. Plaintiff's position involved extensive air travel and in or around October 2013, during a discussion Plaintiff had while in the South Gate, CA corporate office, Plaintiff advised Buzz Hagen that he was flying First Class on Delta Air Lines for 2 reasons.

32. First, there were no baggage fees for up to 3 bags and Plaintiff had 3 large bags along with one engineering tool bag weighing some 80 pounds.

33. The second reason was because of the limited space in economy class.

34. Plaintiff told Hagen he had spinal stenosis with peripheral nerve damage and it was extremely painful for him to use economy class seating.

35. Plaintiff was not advised and/or directed by Buzz Hagen not to use first class for flights or offered any other alternatives to accommodate his medical condition.

36. On or about May 19, 2014, Buzz Hagen provided Plaintiff with his anniversary performance review ratings which were more than satisfactory and had mostly "Exceeds Expectations."

37. On or about March 8, 2015, Buzz Hagen provided Plaintiff another annual performance review and once again, most of the ratings were "Exceeds Expectations".

38. In each of the years 2013 and 2014, Plaintiff in-serviced over 4,000 new chassis in more than 11 states and for very large customers.

39. Plaintiff received high accolades from Buzz Hagen and CIMC China for all of his efforts.

40. Moreover, Plaintiff had security clearances for all and a "Transportation Worker Identification Credential" issued by the TSA- Arlington, VA which provided him access to all shipping ports.

41. Plaintiff also had a "Global Entry Identification" processed by U.S Customs and accompanies his U.S Passport when traveling.

42. On or about January 22, 2015 after repeated prior attempts in the months before January 22, 2015, Plaintiff tried repeatedly to get Buzz Hagen to communicate in a reasonably civilized way with him.

43. Plaintiff gave Buzz Hagen a two-week notice since his abuse on the telephone was so bad that he simply could not function in his position.

44. Buzz Hagen's answer to the two-week notice was to have Plaintiff come to Emporia, VA.

45. While picking him up at the Richmond, VA airport and heading to Emporia, VA, Buzz Hagen insisted that Plaintiff and his wife go on a weekend vacation to Orlando, FL.

46. During the ride to the Emporia, VA plant, Plaintiff turned the offer down three ("3") times only to have Buzz Hagen insist that the company would pay for the trip after all of the hard work he had done.

47. Unfortunately, Hagen's attitude toward Plaintiff and to other employees did not change and he remained abusive.

48. This caused Plaintiff significant stress and his sugar level spiked up to 425 to 535.

49. On or about August 26, 2015, with no other recourse or options to avoid the verbal and daily constant abuse, tired, dealing with his own personal issues with his youngest son's death anniversary on August 30 fast approaching,

Plaintiff just gave up to the bullying, argumentative daily discussions, feeling incompetent most of the time when his record of accomplishments and his own knowledge clearly demonstrated otherwise during his tenure with CIMC-IE and prior work history.

50. Plaintiff then gave Buzz Hagen his two weeks' notice.

51. Hagen's emails were relentless after Plaintiff's resignation.

52. Plaintiff had left CIMC-IE amicably on August 26, 2015 and had his wife driving to Emporia, VA to pick him up.

53. Buzz Hagen started with his constant emails all but begging Plaintiff to stay.

54. He asked Plaintiff to reconsider by taking a long two-day weekend.

55. In consideration of their long term relationship Plaintiff agreed to stay under two conditions, none of which involved a pay raise.

56. The first was for communications and discussions to improve and the second was that Plaintiff needed the V.P. of Operations and Engineering title if he was to be able to fully manage the facility.

57. Up to that point, Plaintiff was being made accountable for the facility but had no control over it.

58. Hagen's agreement with Plaintiff on August 26th, 2015 provided for his total operational authority to include a $5,000.00 best judgment expenditure.

59. Plaintiff also agreed to relocate from Carlisle, PA to the Emporia, VA area by Dec 1, 2015.

60. Plaintiff and his wife immediately began their search for a new home close to the plant in or around Emporia, VA and chose a house which they purchased for $275,000.00, some 27 miles from the Emporia, VA plant.

61. They closed on the property on Friday Nov 6, 2015 and still had their own home in Carlisle, Pennsylvania listed with a realtor.

62. On November 12, 2015 at approximately 11:00AM Hagen, while walking past Plaintiff's assigned company truck with a handicap parking sticker, stated "look at that my V.P. truck parked in the handicapped parking space. Not good".

63. Plaintiff found this comment to be extremely offensive since Hagen knew well enough of Plaintiff's medical issues.

64. On November 14, 2015 one hour after leaving his home in Carlisle, PA and heading back down to the Emporia plant, Plaintiff received an email from Buzz Hagen regarding "temporary re-assignment of duties"

65. Hagen reassigned Plaintiff's duties effective immediately with a meeting to discuss his future with CIMC-IE on December 7, 2015.

...

66. This reassignment was nine ("9") days after the closing of his property in Roanoke Rapids and exactly in accordance with his December 1, 2015 deadline.

67. Plaintiff learned later that in November 2015, Hagen had introduced a man named Chris Ratliff, approximately in his late thirties or early forties as the new V.P. of Operations in Emporia, VA.

68. Plaintiff also learned that his temporary re-assignment of duties" as of December 7, 2015 was probably sent to him early and in error and was never intended to be given to Plaintiff until much later.

69. Buzz Hagen sent Plaintiff a new agreement requiring him to sign it in order to "continue his employment" on November 22, 2015.

70. Plaintiff was being demoted to "Director S.E. Outside Operations", a position which upon information and belief was created specifically for his demotion.

71. The demotion also included a reduction in pay from Plaintiff's original April 2013 hire letter.

72. Plaintiff was constructively discharged on November 22, 2015 when he resigned.

73. In an act of further retaliation, the company attempted to fight Plaintiff's claim for unemployment benefits.

# COUNT I
## Americans with Disabilities Act
### *Against CIMC INTERMODAL EQUIPMENT*

74. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

75. Plaintiff is a "qualified individual with a disability" as that term is defined in the ADA because that individual has, or had at all times relevant hereto, a disability that substantially limited/limits one or more major life activities, or because she had a record of such impairment.

76. Plaintiff is a "qualified individual with a disability" as that term is defined in the ADA because that individual was regarded as and/or perceived by Defendant and its agents as having a physical impairment that substantially limited/limits one or more major life activities.

77. The foregoing conduct by Defendant constitutes unlawful discrimination and retaliation against Plaintiff on the basis of his disability or perceived disability.

78. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

## COUNT II
### ADEA Age Discrimination
*Against CIMC INTERMODAL EQUIPMENT*

79. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

80. By virtue of his age, the Plaintiff is in the class of persons protected by the ADEA.

81. The foregoing conduct constitutes unlawful age discrimination against the Plaintiff.

82. As a result of the Defendant's unlawful age discrimination, the Plaintiff has suffered damages as set forth herein.

## COUNT III
### Pennsylvania Human Relations Act
*Against All Defendants*

83. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

84. The foregoing discrimination and retaliation by Defendant also violates the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

85. As a result of Defendant's violations of the Pennsylvania Human Relations Act, Plaintiff has suffered damages, as set forth herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against each Defendant and that it enter an Order as follows:

a) Defendant is to be permanently enjoined from discriminating or retaliating against Plaintiff on any basis prohibited under applicable federal and state law;

b) Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of discriminating or retaliating against employees based on any basis prohibited under applicable federal and state law and be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

c) Defendant is to compensate Plaintiff, reimburse Plaintiff, and to make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally

withheld from the date she first suffered discrimination at the hands of Defendant until the date of verdict;

d) Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused to his by Defendant's actions as permitted by applicable law;

e) Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct, and to deter Defendant or any other employees from engaging in such misconduct in the future;

f) Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate including but not limited to reinstatement;

g) Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

h) Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

i) Plaintiff is to be granted such additional injunctive or other relief as she may request during the pendency of this action in an effort to ensure Defendant does not engage – or ceases engaging - in illegal retaliation against Plaintiff or other witnesses to this action;

j) The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

k) Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of the Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KOLMAN ELY, P.C.**

_____
Wayne A. Ely, Esquire
W. Charles Sipio, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138
wely@kolmanlaw.net
wcsipio@kolmanlaw.net

*Attorneys for Plaintiff*

Dated:     April 28, 2016